### FRANK LEWIS *v.* THE STATE.

**Criminal Law — Circumstancial Evidence — Sufficiency of to Sustain Verdict.**
    A conviction for murder resting entirely on circumstantial evidence
    will be reversed if the testimony does not come up to the standard
    essential in that class of cases.[1]

Frank Lewis was convicted of murder in the killing of his wife, Lizzie Lewis, in the Circuit Court of Wilkinson county. He was sentenced to the penitentiary for life, and appeals.

On the trial George H. Peets testified that he was visiting about three miles from where Frank Lewis lived on Sunday evening, and about five o'clock he saw the smoke of a burning building, and he went to it; it was Frank Lewis' house, and the roof and ceiling

---

[1]
    Where the verdict of a jury is not supported by the evidence in the case, it should be set aside by the court. Barnett *v.* Jayne, 1 Miss. Dec. 65, and cases cited in note 2.

    The verdict of a jury will be set aside on consideration of the facts alone if they fail to sustain it. Allen *v.* State, 1 Miss. Dec. 126, and cases cited in notes.

    A verdict will not be allowed to stand where there is palpable failure of the proof to sustain it. In such cases a new trial will be granted. Campbell *v.* State, 1 Miss. Dec. 413, and cases cited in note.

    If the verdict of a jury is contrary to the evidence and the instructions of the court, it should be set aside and a new trial granted by the court. Turley *v.* Ingram, 1 Miss. Dec. 542, and cases cited in note 1.

    The judgment of a Circuit Court will be reversed on the ground that the verdict is wrong when no error of law is complained of if the evidence is insufficient to support the verdict of the jury. Porter *v.* State, 1 Miss. Dec. 555, and cases cited in note.

were falling in when he got there; Frank was there, and said when he first saw the fire it was on the roof, and he found some things thrown outside, which he had moved further away; that he asked for Frank's wife, and he replied that he did not know where she was; that he then directed some persons who were present to look in the cistern for her, and Frank said she was not in the cistern; that he then ordered a search for her, and a number went in different directions in search of her, but returned and reported that she could not be found; that witness then asked some of the people present to watch for the body in the burning building, and that he came back the next morning and a body was pointed out to him in the ashes; that it was on its back and the limbs were burned off; witness carefully examined the skull and found that it had been fractured in the back side; did not recognize the body as Lizzie Lewis, but knew it was by the circumstances.

Peter Lewis testified that he was a son of the defendant and Lizzie Lewis, and left home the morning of the fire about ten o'clock, and left his father and mother and a sister at home. His parents had no quarrel that morning, but had a slight quarrel on Friday before; that he had a dispute with his father after the fire and the death of his mother, when his father said: "I got one of you out of the way, and am not going to be bothered." George Lewis and George Carter were present. Did not know his father meant his mother.

Hennie Kelly testified that she was at Frank's house on Friday before the house was burned, and Frank and Lizzie had some words; that Frank came in and said: "Lizzie, God damn you, I am in a heap of trouble, and I believe you make it on me;" that Lizzie replied pleasantly, and there was no more dispute; stayed there the two days preceding the fire, and they were friendly and affectionate.

Charity Lewis testified that she was a daughter of the deceased and Frank Lewis; left home the morning of the fire to go to church, and her parents were at home when she left. Her parents did not have a difficulty that morning. Frank Peets testified that he saw defendant at his father's house the day of the fire between twelve and one o'clock, which was about four miles from where defendant lived; that he rode up and asked if his son, Peter, was there, and, on being told that he was, he rode off immediately in

a gallop towards home. John Mitchell testified that he was a son-in-law of deceased and defendant; that he lived with them part of that year, but could not get along with defendant and left; that Frank and his wife got along badly; that Frank was jealous of her. Dock Green and General Ward each testified that they got to the house among the first; that the house was burning and the roof about to fall in; that Frank was there, and said he did not know where his wife was, and told them that he found the house on fire and things thrown out when he arrived. George Carter testified that after the fire he heard the defendant dispute with his son, Peter, and say: "I killed your mother, and I will take the iron and split your head open."

Defendant's motion for a new trial was overruled, and he appeals.

APPEALED from Circuit Court, Wilkinson county, J. B. CHRISMAN, Judge.

Reversed and new trial awarded, March 6, 1882.

*Attorney for appellant, D. C. Bramlett.*

*Attorney for the State, T. C. Catchings, Attorney-General.*

Brief of D. C. Bramlett:

We complain of the court below in refusing appellant a new trial because the evidence was not sufficient to warrant a conviction. Briefly, the case is this: In May last the accused, his wife, Lizzie Lewis, and their children, Peter and Charity, were living together in family on a place of one John R. Matthews in this county. Upon a certain Sunday the family were all at the house of their residence until about ten o'clock A. M., when the boy, Peter, left upon a visit, and shortly after that time the girl, Charity, also left home, leaving her father and mother, Frank and Lizzie Lewis, at home together. Afterwards, between eleven and twelve o'clock, the accused is found visiting, or riding around the neighborhood, about three miles from home, and is absent from home several hours, until the house burning. In the evening, about three, four or five o'clock, the house was discovered to be on fire, and the accused found carrying mattresses and bed clothing

further from the house, where they had been placed by some one. At that time no one could enter the house, and the house was burning from the top.

Lizzie Lewis, the wife, was not to be found, and has never since then, up to the time of the trial, been seen alive, as far as has been ascertained. In the debris of the burned building the remains of a human body were discovered, so far consumed and destroyed that anything like positive identity was impossible, and even the sex was beyond determination. Only the ashes of the clothing and the buttons corresponded to that worn by Lizzie Lewis, and the coin about the body to that of which the wife was possessed. The limbs were burned to ashes, except short pieces of the bones of the legs and arms, and the skull was entire, save a piece of two by one and one-half inches, or about that size, of a triangular shape, which was missing between the sutures at the top and rear of the skull. The skull was very brittle, and a falling brick would readily fracture it.

This is all the evidence to show that the body was that of Lizzie Lewis, and that she had been killed and murdered. Conceding that the ashes of the clothing, the indestructible dress buttons, and the coin found about the body, coupled with the fact that she was afterwards missing, might be sufficient to engender the belief beyond a reasonable doubt that the body found was that of Lizzie Lewis, yet there is an utter absence of any evidence showing the existence of criminal agency in effecting the death, or, in other words, that there is no evidence establishing the *corpus delicti*, for this means something more than the finding and identification of the body. For to establish this there must be evidence of a killing—a murder.

The theory of the prosecution is that the break in the skull was caused by a blow from the accused with some instrument which produced death, after which he burned the house for the purpose of destroying the body and thus prevent the establishment of his crime. In answer to this, we say, first, there is no motive whatever shown to induce the commission of such a horrible crime; that he and his wife were living together on the best of terms, and on that particular morning and for some days previous they were particularly friendly and affectionate; and, further, that the skull, as found, was very brittle and was easily fracturable by a falling brick, and that the remains were covered with brick that

had fallen from the wall, and no other instrument, implement, or weapon was found about it, and, if the break or indenture was not caused by the action of the fire, that one of these bricks, or a piece of timber, falling, struck against the skull and broke it. In support of this, we state that it is an anatomical fact that the sutures of the skull, which were two of three borders of this break, is in an adult person the strongest part of it; that a blow may crack the skull across or on a parallel with, but never on the line of them. The action of the fire, then, had destroyed the cohesiveness of the sutures, and the missing or indented piece of skull, after or during the burning, had fallen or crumbled away or been broken in by a falling brick or piece of timber. And we insist that the evidence adduced falls far short of establishing that certainty of a murder which the law demands.

A reasonable, if not a more reasonable, hypothesis than that of guilt is that during the absence of accused and the children, the house caught fire on top from the defective chimney, and Lizzie Lewis, being in the house alone, and unable to extinguish the flames, endeavored to save the household effects by removing them, and, returning into the house once too often, was overcome with the smoke and heat, or struck with some falling timber, and perished. That the statement of the accused is true—to the effect that he found the household goods outside, but near the house, and commenced removing them when he appeared at the burning building—is, we think, shown by the testimony. This shows that he was not bringing articles out of the house, but from near the house, and in burning distance, where they had been placed by some other person.

We have so far discussed this case as one resting upon circumstantial evidence alone, which is true, save a pretended confession or admission made by the accused, to which we now refer.

Peter Lewis, the son, testifies that subsequent to the fire, in a dispute with his father, the accused, he said to him: "I got one of you out of the way, and am not going to be bothered." Now, if this meant anything, it was that his daughter, Charity, had left him, and that he was not going to be longer bothered with him.

But we are confronted with the testimony of George Carter, to the effect that he had heard the prisoner, in a dispute with Peter, say: "I killed your mother, and I will take the iron and split your head open." But the manner of this witness in testifying,

even as shown by the written report, is sufficient alone to condemn him. Then, again, it is so widely at variance with the testimony of the witness, Peter, for it was on the same occasion when one George Sims was present.

Now, when the *corpus delicti* is proven *aliunde,* which, we insist, is not the case here, confessions and admissions, at the best, are the weakest and most suspicious of all testimony, seldom remembered accurately or reported with due precision, and which is well exemplified in the testimony of these two witnesses. Upon the whole evidence, the verdict of the jury was flagrantly wrong, and a new trial should have been awarded.

The remaining error assigned is that the court erred in admitting the testimony of Dick Peets, who was present in the court contrary to the rule established for the exclusion of witnesses. The rule established by the court was violated to the prejudice of the prisoner, and against his objection, in permitting this witness to testify. The time that the accused might have reached home that day was important, and without this testimony it is shown almost conclusively that he could not have reached the house until after it was on fire.

We, therefore, ask that a new trial be granted appellant.

Brief of T. C. Catchings, Attorney-General:

But one question is presented in this case, and that is as to the sufficiency of the testimony to support the verdict.

The testimony is brief and easily understood, and I do not think I could aid the court by a discussion of it.

I think it will be readily concluded that the jury were abundantly justified in finding the accused guilty.

OPINION.—*Per curiam:*

We must regard this case as resting on circumstantial testimony. The alleged confession proved by the son of defendant is no confession at all, and that proved by the witness, Carter, is almost equally as meagre and does not impress us as being probable. Indeed, it seems so improbable as to be difficult of belief. Regarded as a case of circumstantial testimony, it does not come up to the standard essential in that class of cases, and the judg-

ment of conviction must be reversed as not warranted by the evidence.

*Judgment reversed* and new trial awarded.